UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JOHN JOSEPH FAY, JR.,                :
                                     :
            Petitioner               :    No. 4:CV-05-1790
                                     :
      vs.                            :    (Complaint Filed 9/02/05)
                                     :
PENNSYLVANIA BOARD OF,               :    (Judge Muir)
PROBATION AND PAROLE,                :
                                     :
            Respondent               :

**ORDER**

March 31, 2006

Presently before the court is a petition for writ of
habeas corpus, filed pursuant to 28 U.S.C. § 2254, by John
Joseph Fay, ("Fay"), an inmate presently confined in the
Mahanoy   State   Correctional   Institution,   Frackville,
Pennsylvania.  Fay challenges the denial of his parole by the
Pennsylvania Board of Probation and Parole ("the Board").
Pursuant to this Court's Show Cause Order issued on September
13, 2005, the respondent filed a response to the petition
with a supporting brief on October 28, 2005.  (Doc. Nos. 10,
11).   On November 8, 2005, Fay filed a traverse.   (Doc.
No.13).  The petition is ripe for consideration, and, for the
reasons that follow, will be denied.

**Background**

Petitioner is serving an aggregate sentence of 18½

years to 42 years for 2nd degree murder, robbery and escape. (Doc. No. 9, Ex. A, Sentence Status Summary ).   Fay's minimum sentence expired on February 19, 2002 and his maximum sentence presently expires on August 19, 2025.  Id.

Fay was first considered for parole in November, 2001. (Doc. No. 9, Ex. C., Notice of Board Decision).   The Board denied parole, determining that "the fair administration of justice cannot be achieved through your release on  parole" and set his next parole review in or after November, 2002. Id.   The Board stated that in the next review, it would consider:  (1)  whether  Fay  maintained  a  favorable recommendation for parole from the Department of Corrections; and (2) whether he maintained a clear conduct record and completed  the  Department  of  Corrections  prescriptive programs.  Id.

On November 19, 2002, the Board conducted a second parole  review.    (Doc.  No.  9,  Ex.  D,  Notice  of  Board Decision).  The decision was to deny Fay parole.  The Board's reasons to deny parole included (1) Fay's version of the nature and circumstances of the offenses committed; and (2) his interview with the hearing examiner and Board Member. Id. Fay's next parole review was set for October, 2004, or later.   The Board advised Fay that in the next review, it

2

would consider: (1) whether he had maintained a favorable recommendation for parole from the Department of Corrections; and (2) whether he maintained a clear conduct record and completed the Department of Corrections' prescriptive programs.  Id.

On April 20, 2004, the Board conducted a third parole review.  (Doc. No. 9, Ex. E, Notice of Board Decision).  The decision was to deny Fay parole.  The Board's reasons to deny parole included (1) Fay's version of the nature and circumstances of the offenses committed; and (2) his interview with the hearing examiner and Board Member.  Id. Fay's next parole review was set for October, 2004, or later. Id.

On July 23, 2004, Fay filed a petition for writ of mandamus in the Commonwealth Court of Pennsylvania, challenging the Board's first three denials of parole.  (Doc. No. 9, Ex. G).   By Order dated April 19, 2005, the Commonwealth Court dismissed the petition for failure to state a claim for relief.  (Doc. No. 9, Ex. H).

On October 29, 2004, the Board, again, interviewed Fay and denied parole. (Doc. No. 9, Ex. F, Notice of Board Decision).  The decision stated the reasons for the denial as follows: (1) Fay's version of the nature and circumstances of

3

the offenses committed; (2) his refusal to accept responsibility for the offenses he committed; (3) his lack of remorse for the offense committed; (4) reports, evaluations and assessments concerning Fay's physical, mental and behavior condition and history; and (5) Fay's interview with the hearing examiner and/or Board Member. Id. Fay's next parole review was set for October, 2005, or later. The Board stated that in the next interview, it would consider (1) whether Fay had received a favorable recommendation for parole from the Department of Corrections; and (2) whether he maintained a clear conduct record and completed the Department of Corrections prescriptive programs. Id. The Board also noted that Fay's minimization of his offense makes him an unsuitable candidate for parole. Id.

On May 20, 2005, Fay filed a petition for writ of habeas corpus in the Pennsylvania Supreme Court, invoking the Court's original jurisdiction. (Doc. No. 9, Ex. I). This appeal is still pending.

On September 2, 2005, Fay filed the instant petition in which he challenges the Board's adverse decisions of its review of his parole. He raises the following four grounds for relief:

> 1.   Whether the Pennsylvania Board of
>       Probation and Parole retroactively

4

applied the post-1996 amendments, and guidelines, to petitioner's case when he applied for consideration of parole.

2.   Whether the Pennsylvania Board of Probation and Parole's statutory amendment, which shifted the "focus" of the parole program from prisoner rehabilitation to protection of the public, was retroactively applied to petitioner's case, when he applied for consideration of parole.

3.   Whether the Pennsylvania Board of Probation and Parole used impermissible criteria to deny petitioner parole, in violation of Due Process.

4.   Whether the Pennsylvania Board of Probation and Parole violated petitioner's Due Process rights by retroactively applying the post-1996 parole amendments to petitioner's case.

(Doc. No. 1, petition).

**Discussion**

A.   **Exhaustion of State Court Remedies**

Generally, a habeas petitioner must show that the federal constitutional claims asserted in the federal habeas petition have been "fairly presented" to the sate courts, or that circumstances exist rendering the available state court process ineffective to protect the petitioner's rights. See 28 U.S.C. § 2254(b). Recently, in DeFoy vs. McCullough, 393

5

F.3d 439, 444 (3d Cir. 2005), it was held that "an action for mandamus remains viable as a means for examining whether statutory requirements have been altered in a manner that violations the ex post facto clause."  DeFoy, 393 F.3d 439, 444 (3d Cir. 2005), quoting Coady vs. Vaughn, 770 A.2d 287, 290 (2001).  Following DeFoy, the Pennsylvania Supreme Court decided the case of Cimaszewski vs. Bd. of Prob. & Parole, ____ Pa. _____, 868 A.2d 416, 427 (2005), wherein it was recognized that an ex post facto claim may arise from the application of the 1996 amendments to an applicant convicted prior to the enactment of the amendments who if it can be shown that the amendments "create [] a significant risk of prolonging his incarceration."  These recent developments indicate that there are state court remedies available to raise an ex post facto claim such that exhaustion should not be excused.

In the instant action, while it is apparent that Fay challenged his first three parole denials by filing a mandamus action in the Commonwealth Court of Pennsylvania, Fay failed to seek appellate review of the dismissal of his Commonwealth Court action, despite the fact that he possessed a right of direct appeal; see 42 Pa.C.S. § 723(a), and his petition in the Pennsylvania Supreme Court, challenging all

6

four denials, is still pending.   Thus, he has not fairly

presented the issues raised herein to the Pennsylvania state

courts.   Nor has Petitioner raised an ex post facto claim in

the Pennsylvania Commonwealth Court with respect to his most

recent, October 29, 2004, parole denial.   Thus, it is

apparent that Petitioner has failed to exhaust his state

court remedies.   See  28 U.S.C. § 2254(b)(1)(A); O'Sullivan

v. Boerckel, 526 U.S. 838, 842-45 (1999).   Notwithstanding

the failure to exhaust, the Court will consider the petition

as the claims raised in the petition are clearly without

merit.[1]    See 28 U.S.C. § 2254(b)(2)( a federal court can

deny a habeas petition "on the merits notwithstanding the

failure of the applicant to exhaust the remedies available in

the courts of the State").

---

[1]  Recently, the Supreme Curt ruled that an ex post facto
claim of the nature presented here may be pursued in an action
under 42 U.S.C. § 1983.  Wilkinson vs. Dotson, — U.S. — , 2005
WL 516415 (2005). There is no need to exhaust state court
remedies before filing a § 1983 action. Although Justice
Scalia, in a concurring opinion in which Justice Thomas
joined, suggested that habeas corpus would not be available to
pursue such a claim, the majority ruling did not resolve this
issue. Whether habeas corpus relief is or is not available
with respect to the claims advanced by Fay is not presently
before this Court.  In any event, the issue is academic
because the underlying claims lack merit whether brought in
habeas or under § 1983.

### B.    The Merits of Fay's Ex Post Facto Claims

Fay's challenge to the denial of his parole is based on the argument that the Board violated the Ex Post Facto Clause of the United States Constitution by applying the 1996 amendment to 61 Pa.Stat. §331.1, the statute governing parole standards.    "The Ex Post Facto clause of the United States Constitution applies to a statutory or policy change that 'alters the definition of criminal conduct or increases the penalty by which a crime is punishable.'"  Mickens-Thomas vs. Vaughn, 321 F.3d 374, 383 (3d Cir. 2003)("Mickens-Thomas I"), quoting, California Dept. of Corrections vs. Morales, 514 U.S. 499, 506 n. 3 (1995).  Ex post facto restrictions apply to parole matters.  See Garner vs. Jones, 529 U.S. 244, 250-255 (2000).

In 1996, the Pennsylvania legislature amended the section of its parole law setting forth the public policy statement of the Commonwealth concerning parole. Specifically, the 1996 legislation decreed that "the board shall first and foremost seek to protect the safety of the public."  61 P.S. § 331.1 (Purdon's 1999).[2]  Before then,

_____

[2]  After amendment, section 331.1 reads in full:

The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of

section 331.1 made no mention of pubic safety, and in fact

declared the public policy of the Commonwealth to be that

parole would be a period of rehabilitation of an inmate for

his restoration to society.[3]

---

> the offender while protecting the public,
> the opportunity for the offender to become
> a useful member of society and the
> diversion of appropriate offenders from
> prison.
>
> In providing these benefits to the criminal
> justice system, the board shall first and
> foremost seek to protect the safety of the
> public.  In addition to this goal, the
> board shall address input by crime victims
> and assist in the fair administration of
> justice by ensuring the custody, control
> and treatment of paroled offenders.

61 P.S. § 331.1 (Purdon's 1999).

[3]  Formerly, section 331.1 read as follows:

> The value of parole as a disciplinary and
> corrective influence and process is hereby
> recognized, and it is declared to be the
> public policy of this Commonwealth that
> persons subject or sentenced to
> imprisonment for crime shall, on release
> therefrom, be subjected to a period of
> parole during which their rehabilitation,
> adjustment and restoration to social and
> economic life and activities shall be aided
> and facilitated by guidance and supervision
> under a competent and efficient parole
> administration, and to that end it is the
> intent of this act to create a uniform and
> exclusive system for the administration of
> parole in this Commonwealth.

In <u>Mickens-Thomas I</u>, our Court of Appeals assessed the impact of the amended statute as construed by the Board and applied in that case.  The court explained that the essential inquiry was "whether, <u>in</u> <u>practice</u>, the new language has altered the fundament for reviewing parole applications." <u>Id</u>. at 384 (emphasis added). In finding an Ex Post Facto violation in <u>Mickens-Thomas I</u>, the Court of Appeals for the Third Circuit observed that there was "significant evidence that [the Board] acted upon policies that were established after [the petitioner]'s crime and conviction." <u>Id</u>. at 393. The Court of Appeals explained:

> [A] parole decision that fails to address any of the criteria mandated by Board policy, such as institutional recommendations, willingness to undergo counseling and educational achievement, and instead utterly ignores all factors counseling in favor of release, falls outside the realm of the legitimate exercise of discretion under the pre-1996 policies. Inference instructs us that the Board inappropriately relied on policies implemented in 1996, rather than the parole policies in place at the time of Thomas's crime and conviction.

<u>Id</u>. at 387.  Of substantial concern to the Court of Appeals was the fact that the evidence demonstrated that the Board interpreted the amended statute to "mandate foremost the consideration of public safety."   <u>Id</u>. at 391. "The Board mistakenly construed the 1996 statutory change to signify a

substantive    change    in    its    parole    function."    <u>Id</u>.

Notwithstanding this conclusion, the Court of Appeals for the

Third Circuit also acknowledged a recent decision of the

Pennsylvania Supreme Court, Winklespecht vs. Pa. Bd. of Prob.

& Parole, 571 Pa. 685, 813 A.2d 688 (2002), which concluded

that the amended § 331.1 did not require the Board to place

the greatest weight on considerations of public safety. <u>Id</u>.

However, the Court of Appeals concluded that the Winklespecht

decision, "made <u>after</u> the Board's actions on Thomas's parole,

came too late to alter the Board's view of the statutory

amendment on the outcome of the case." <u>Id</u>. (emphasis in

original.)

　　　　In <u>Mickens-Thomas I</u>, as well as in other rulings

issued by the Court of Appeals, the appropriate remedy for an

Ex Post Facto violation has been to remand the matter to the

Board for reconsideration, applying the pre-1996 law.[4]  Hart

vs. Pa. Bd. of Prob. & Parole, 2003 WL 22838381 (3d Cir. Nov.

23, 2003); <u>see</u> <u>also</u> McLaurin vs. Larkins, 2003 WL 22147497

(3d Cir. Sept. 18, 2003); Hollawell vs. Gillis, 65 Fed. Appx.

---

　　　[4]   Following remand in <u>Mickens-Thomas I</u>, the Board again
denied parole. Our Court of Appeals found that the Board had
exhibited "willful noncompliance, bad faith, and . . .
vindictiveness" sufficient to direct the release of the
petitioner. Mickens-Thomas vs. Vaughn, 355 F.3d 294, 310 (3d
Cir. 2004) ("<u>Mickens-Thomas II</u>").

11

809, 2003 WL 1919371, at *8 (3d Cir. April 23, 2003).
However, the class of individuals awarded such relief has
been limited to those who were denied parole after adoption
of the 1996 changes and before Winklespecht clarified the
fact that the amendment did not change the administration of
the policies. In those cases where parole was denied after
Winklespecht, it was evident that the denial of parole was
based upon factors that would have resulted in the denial of
parole under pre-1996 policies and practices. See Grob vs.
Pa. Bd. of Prob. & Parole, Civil No. 3:CV-04-0275, slip op.
at 6 (M.D. Pa. Oct. 29, 2004)(Nealon, J.); Sphar vs. Pa. Bd.
of Probation & Parole, Civil No. 3:CV-04-1145, slip op. at 7
(M.D. Pa. Oct. 29, 2004)(Munley, J.); Schaeffer vs. Pa. Bd.
of Probation & Parole, Civil No. 3:CV-04-1159, slip op. at 8
(M.D. Pa. Oct. 26, 2004)(Munley, J.).

In this case, we need address the ex post facto
challenge only as it relates to the most recent parole denial
of October 29, 2004.   See Johnson vs. Lavan, 2004 WL 1622051
(E.D.) (adopting magistrate judge's report at 2004 WL
1291973, page cite at *4 n.4); Schaeffer, supra, slip op. at
5 (finding that although Petitioner challenged seven denials
of parole, the challenges to the first six denials were
rendered moot by the fact that subsequent parole hearings

12

were conducted).

The Court finds that it was not the Board's application of harsher laws or guidelines that caused the denial of parole. Initially, the Court notes that Fay's most recent parole decision came well after the Pennsylvania Supreme Court had decided Winklespecht, supra. Thus, unlike in Mickens-Thomas I, the Board had the benefit of Winklespecht prior to conducting Fay's parole review. Additionally, the Board's decision denying Fay parole does not mention risk to public safety as a reason for denying parole. Rather, the reasons for denying parole are more directed to the Board's perception of Fay's rehabilitation[5]. The Board specifically enumerated multiple significant reasons for denying parole that would have also warranted the denial of parole prior to the 1996 amendments: his minimization of the nature and circumstances of the offenses committed; his lack of remorse for the offenses committed; and his refusal to accept responsibility for the offenses

---

[5]Even if Fay construes the enumerated reasons as public safety oriented, this does not create an ex post facto concern as public safety has always been a parole consideration. Mickens-Thomas I, simply instructs that it is not to be given greater weight than the other numerous individualized factors to be considered by the Board. Mickens-Thomas I, 321 F.3d at 385.

committed.[6] (See Doc. No. 9, Ex. F., Board Decision of October 29, 2004).  Thus, based on the petitioner's failure to accept responsibility for the offenses he has committed, and the lack of remorse for the offenses committed, it is clear that there is a substantial basis for denying parole regardless of the 1996 amendments to the Parole Act.

After Winklespecht, there must be at least some evidence supporting a rational inference that the Board is taking action contrary to the result that would have been obtained prior to 1996.  See Shaffer vs. Meyers, 338 F.Supp. 2nd 562, 565-66 (M.D. Pa. 2004).  The mere denial of parole is insufficient to raise such an inference.  Otherwise, a court is unable to discern that, in practice, the Board has elected to apply new policies to inmates whose crimes were committed before 1996.   Where, as here, the Board articulates a rationale for denial of parole, consistent with its pre-1996 practice and policies, no inference of an ex post facto violation may be drawn.

Moreover, "[t]here is no constitutional right or inherent right of a convicted person to be conditionally

---

[6]For "nature and circumstances of the offense(s) committed," see 61 P.S. § 331.29 (Purdon's 1999)(cited in Reynolds vs. Pa. Bd. of Prob. & Parole, 809 A.2d 432 n.7 (Pa.Commw. 2002).

released before the expiration of a valid sentence." Conn.
Bd. of Pardons vs. Dumschat, 452 U.S. 458, 464 (1981)(quoting
Greenholtz vs. Inmates of Neb. Penal & Corr. Complex, 442
U.S. 1, 7 (1979)).    While "States may under certain
circumstances create liberty interests which are protected by
the Due Process Clause," Sandin vs. Conner, 515 U.S. 472,
483-84 (1995), the Pennsylvania Supreme Court has long held
that "a denial of parole does not implicate a
constitutionally protected liberty interest."   Coady vs.
Vaughn, 564 Pa. 604, 770 A.2d 287, 291 (Pa. 2001); see also
Rogers vs. Pa. Bd. of Prob. & Parole, 555 Pa. 285, 724 A.2d
319, 322-23 (Pa. 1999)(affirming Parole Board's discretion to
grant or deny parole because "parole is a matter of grace and
mercy shown to a prisoner who has demonstrated to the Parole
Board's satisfaction his future ability to function as a law-
abiding member of society upon release before the expiration
of the prisoner's maximum sentence").   Consequently,
petitioner's Due Process argument is meritless, and the
petition for writ of habeas corpus will be denied.

**IT IS HEREBY ORDERED THAT:**

> 1.  The petition for a writ of habeas corpus is **DENIED**.
>
> 2.  Petitioner's motion for an evidentiary hearing (Doc. No. 14) is **DISMISSED** as moot.

15

3.    The Clerk of Court shall **CLOSE** this
      case.

4.    There is no basis for the issuance
      of a certificate of appealability.


                    s/Malcolm Muir
                    MUIR
                    United States District Judge